United States v. Lockwood by Mr. Didwania May it please the court, Vikash Didwania on behalf of Mr. Lockwood. I plan to start with our sentencing arguments and then address the destructive devices and use the interstate commerce arguments for the briefs, but of course I'm happy to answer questions on any of those topics that the court desires. The sentencing court here at the sentencing hearing mentioned twice that the... Wait a second. Before you go off the destructive device, I don't understand your conception of a destructive device. Do you think an unloaded gun is a weapon? It is your honor, but it all depends on how Congress has defined these devices. So Congress has made illegal the possession of certain firearms without ammunition. Congress has made illegal the possession of certain types of ammunition. And so in those instances, if the firearm that you're possessing, the device, has been made illegal in that state, then it falls within the definition. But here, this court and several other circuits have made clear that for a device to be a destructive device, it needs to have all the ingredients necessary to inflict harm. It needs to be able to detonate. Well, but there's a question. What are the bullets? The bullets are not the ingredients of the gun, even though they're in the gun. Now why does the plug, the electrical plug, why does that have to be... That's the thing you use to activate the bomb. That's not the bomb itself. But the power supply, the battery, it's hooked up into the device with the wires. Well, how is it different from plugging a lamp into a wall? Well, here, the... I mean, this is a device that was... You wouldn't say a plant is... You wouldn't say a lamp is not a lamp until it's plugged in, because it doesn't light up unless it's plugged in, right? It's still a lamp, isn't it? Just with the lamp... So why isn't a pipe bomb a pipe bomb even before you plug it in to an electrical source so it can blow up? I mean, here, this pipe bomb is sitting in a mailbox. It has no access to a power supply. It cannot detonate without a power supply. That's in the record. And so it needs the power supply to be capable of detonating, to be able to inflict harm. And so... Well, that's true of the unloaded gun also. Right, so... It's harmless until it's loaded. But it's still a gun. Yeah, so if Congress had defined a firearm to be a gun that's loaded, then, of course, all those prerequisites would need to be met for somebody to be convicted. But if Congress has defined firearm to be an unloaded gun, then that's not necessary. And here, Congress has made very specific definitions of destructive devices. It has to be an explosive bomb... Have to be what? An explosive bomb that has all the components necessary to be able to inflict harm. And this isn't just... But the question is whether the plug is a component, right? They say the bullets are in the gun, but they're not a component of the gun. So why is the... What is it you... You don't ordinarily plug a pipe bomb into the wall. How do you... What is the electrical device that you attach to it? I believe usually it's some sort of battery that's hooked up into the wires that are coming out of the device. So there's a wire coming out of the bomb... And you hook the electrical source to the wire. Is that it? Well, how is that different from plugging a lamp into the wall? You have a cord coming out of the lamp, and you stick it into the wall. Now, how is that different from sticking a wire into a battery? Right? The pipe bomb comes with this little wire dangling from it. It's like the cord in a lamp. And you plug it into something. And it's ready to blow up. Until you do that, it's not ready to blow up. But it's still a pipe bomb. But if it's not ready to blow up, it can't... It doesn't have all the components necessary to inflict harm. No, but how is that different from the lamp example? Well, I mean, a pipe bomb here is mobile. The lamp has a cord, but it doesn't have an electric source. The pipe bomb has a wire, but it doesn't have an electric source because the wire hasn't been plugged in. So I don't see what the difference is. And I think one would say the lamp isn't capable of lighting a room without having access to an electrical source. And just like that here, the pipe bomb isn't capable of inflicting harm without having ready access to an electrical source. I don't understand you. What's the difference? The difference here is the statute requires that the device be capable... The lamp doesn't work until you plug it in, and the pipe bomb doesn't blow up until you plug it in to its battery. So what's the difference? The difference is if the statute required the lamp be able to... be capable of lighting a room, readily available to light a room, I think one would require to have ready access to an electrical source for somebody to be convicted of possessing that lamp. And similarly here, Congress has required that the bomb, the pipe bomb, be either capable of inflicting harm or readily available to inflict harm. And that requires that the bomb have access to a power source. No, it doesn't. It's like saying a lamp... The law requires you sell a lamp. It has to be capable of lighting a room. But of course, it's understood it has to be plugged in, right? So how is this any different? I mean, the difference here is that... There's no statutory definition, right, that would differentiate it from the lamp. The statutory definition, as interpreted, requires that the device be able to inflict harm. But look, it's true for the lamp, right? If you buy a lamp and you plug it in and it doesn't work, you can sue for breach of warranty, insist on your money back, it didn't work, but it's still a lamp. It's not half a lamp because it wasn't plugged in. I want to just say, I have something more preliminary than that, and that is the attorney stipulated that this was a destructive device. And the only defense was that he didn't know it. I think Judge Posner's questions are pretty strong if they made this argument. But you're stuck with a stipulation at the beginning, and the whole argument was, well, yeah, here's this package, and they just didn't know what was in it, as opposed to an ineffective bomb. That's the argument, isn't it? That's the one you're stuck with. So let me address the stipulation. The stipulation, to the extent that it consumed or was attuned to this notion that the bomb was functional, then it's incorrect, setting aside Judge Posner's points we just discussed. But to the extent that it addressed functionality, it was incorrect, and the stipulation should be set aside. But from the record, it appears that the parties, this was an oversight, neither party nor the court were focused on this issue of functionality and that the device needed to be functional. There wasn't a stipulation that it is a destructive device? The stipulation doesn't specifically address functionality. Say that again, I can't hear you quite. The stipulation doesn't explicitly address functionality. You're correct. But that would be preposterous, because it would be totally empty, the stipulation. So the record reveals that the parties understood this device wasn't functional without a power source. Both the attorneys mentioned that this device wasn't capable of detonating without a power supply. What did he know? Sorry, Your Honor? Lockwood says he didn't know. He just thought it was a package, and he put it in the mailbox. I don't know what he was supposed to do with it, but it wasn't in the mailbox. We're trying to blow up a mailbox, if that was the theory. Really, I'm not trying to. . . I'm looking at what you've got, and what you may have is some kind of a challenge, habeas, ineffective assistance. That's one possible rule, although to be clear, we haven't raised an ineffective assistance claim. Say that a little louder, please. That's one possible option, but we haven't raised. . . To be clear, we haven't raised an ineffective assistance claim on direct appeal. But simply just looking at the record, it's apparent that the device here wasn't functional. The way the courts have interpreted it. . . What was the purpose of the stipulation? The purpose was to narrow the scope of the issues and to note that this device constituted a pipe bomb, but not one whether it was functional or not. You can get into this argument. That's my point. This discussion that you're having here and trying to assert, okay, Judge Posner has challenged it, but this wasn't done at trial. It was stipulated, and he's got this idea that he's just a guy doing a favor for this gal and put it in the wrong place, probably, and put it in the mailbox and didn't know what was in it. You may have thought it was a birthday present or something. Now, that's pretty far-fetched, but nevertheless, that's what you're trying to. . . That's what you're trying to argue below, right? That was the focus of the defense attorney was to argue the knowledge issue. That's right, Your Honor. Yeah, and that's a problem. But at the end of the day, I mean, if the stipulation is assumed to cover functionality, that it addressed functionality and satisfied this element. . . It would have no function other than, right? If it didn't address functionality, it'd be totally empty. Well, stipulate to a destructive device. No, actually, we didn't stipulate to a destructive device within the meaning of the statute. We stipulated to something that's totally irrelevant to the case. But if that's the case, then given the state of the record, the stipulation should be set aside. I mean, the device wasn't functional. It wasn't capable of inflicting harm without additional components. But you don't seem to understand. If you stipulate something, that's it. You haven't given the other side any chance to contest it because the other side thinks it's been removed from the case as an issue. That's what . . . And that's Judge Mannion's point, you know? The lawyer may have done a dumb thing, but that doesn't justify a reversal. It justifies a claim of ineffective assistance. It may justify a claim of ineffective assistance, but even on this record, where the device isn't functional, where the government has said . . . You don't seem to understand what the stipulation means. The stipulation stipulates that it's a destructive device. That's the statutory term. That's the end of that issue. It's been removed from the case. You can't say it's stipulated to a destructive device that is not a destructive device. That's what you're saying. You're in your rebuttal time if you want to save yourself. Well, you want to say something about the sentencing, right? I'll just very briefly note that the sentencing court here made a mistake in the sentencing decision. It mentioned twice that the device had exploded or was detonated, and that simply did not occur. The device was . . . The components were intact at the end of the day, and they were passed around to the jury at trial, and it impacted the sentencing because the court focused on it, and it was one of the driving forces for the court's decision that this was a serious offense, that Mr. Lockwood had placed a functional device that actually exploded in a mailbox. You're concerned. It seems to me it was a very cryptic discussion, and the judge prefaced it by saying he hadn't sentenced anybody in the past 16 years. That's right, Your Honor. It appears there have just been mistakes by the sentencing court, and we ask that at least the sentence be reversed so that this can be done properly. I'll reserve the remaining time. Why did the previous judge remove himself from the case? I wasn't the trial lawyer, Your Honor, so I'm not sure why. Didn't he retire? He may have. I'm not sure. Baker. Okay. Well, thank you, Mr. DiMaria. Ms. DeCarlo. Good morning, and may it please the court and counsel, I'm Meredith DeCarlo for the United States of America. This case comes down really to two things. First, it illustrates why the concept of waiver exists, and second, it is about the reasonableness of the sentence imposed by the district court. If it were acceptable for parties to abandon their theory of the case and strategy in the trial court after defeat and pursue something new on appeal, most litigants would take advantage of that opportunity. But it is not. That practice is barred by waiver and for good reason. A valid waiver leaves no error for the appellate court to correct. Here, Lockwood personally stipulated to certain facts, so the government did not present that evidence through testimony or physical evidence. Then, through counsel, he agreed to jury instructions and made concessions in opening statement and closing argument that left it clear that there was one issue for the jury to decide, an element that was common to both counts with which he was charged, and that is knowledge. Now, on appeal, he seeks to undermine the stipulations and concessions and jury instructions, which were never challenged in the district court. Therefore, his challenge to the record as it developed should not be given treatment in this court. What about the sentence? Now, as to the sentence, the appellate has not established that this sentence of 120 months exceeded the boundaries of reasoned discretion. The court was aware of Mr. Lockwood's criminal history, which, setting aside his juvenile record, which included his banging a girl's head against the wall, included multiple convictions for violent crimes, including shooting into a building to get some dudes he was after, an alleged rape. They weren't recent, were they, these crimes? Hadn't he more or less gone straight and become a businessman? Yes, Your Honor, you're correct that they were not recent crimes. He was not convicted of any new violent crimes for a period of time, but by putting a pipe bomb in a stranger's mailbox, the court could have reasonably inferred that Lockwood didn't just dip his toe back in the water, he dove back into the kinds of crimes that he had been committing earlier in his life. Now, did the judge think that the pipe bomb had blown up? It's important not to flyspeck the record. There's nothing that indicates that the court did believe that the bomb detonated of its own accord. In context, it appears to be a reference to a paragraph that is in the PSR, Paragraph 20, which describes what happened with the Pan Disruptor as a controlled explosion. Well, but that's not him blowing up a bomb, obviously. Right, and that is not what the record reflects. The court never said that Lockwood himself detonated the bomb. In that respect, the video of the disarming of the bomb, I believe, speaks for itself. You can clearly see that the pieces fly apart in a dramatic fashion. It may have been a colloquial way to refer to the controlled explosion to say that it was exploded or detonated, or it may have been a slip of the tongue, but it was not a mistake. It was not a clear error that the court relied on. This comment was that it was blown up as it was designed when, in fact, it was blown up by an external force. I'm sorry. I think I missed the beginning of your question. I'm not very good at this, but it didn't blow up as it was constructed. It blew up because of an external force that came in and blew it up, and the judge said it exploded. I think what really is the only problem I have with the sentencing is that there was not an examination of some of this. It's one thing to talk about mitigating stuff in 3553 and all that, which the judge apparently did not do. Maybe it's implied. That's all I'm wondering. If this should go back to resentencing to extend it out, and maybe that's still a justified duration. I'm not saying it isn't, but that's why I wanted to hear what your position is. You didn't talk about it much. Well, I think it's clear from what the district court said that his overriding concern was incapacitation, and that was based on the defendant's past history of violent crime. Over and over he said that you need to be taken out of society, I'm paraphrasing, or incapacitated, and so that was his overriding concern, I think, for the record. He certainly had a reason. He did have a business, had 14 employees. He had done things that were somewhat, I guess, legitimate business and everything. It was a long time in the previous stuff. That doesn't get him off the hook necessarily, but sometimes it helps when that's in part of the examination for the discussion in the sentencing hearing, and maybe he didn't talk about that much, but I was just thinking maybe you had some more to say about that. Why that wasn't a proper sentencing process currently, and that's where it gets back to where he hadn't sentenced somebody. He's been around a long time. I'm sure he knows how to sentence. It's just that this came up, and it's just something they're arguing, hanging their hat on, so just tell me that it's not any good. At least I want to hear your reason. I'm sorry. I didn't catch the last part of that. I'm not making any sense. Is that what you're saying? No, no. I actually couldn't hear you. I apologize, Your Honor. Really? Just at the very end there. Maybe I should pull this thing up here. I just knocked the cap. No, I just want to know if the sentencing, it was short, and, yes, he did have a PSR and all that stuff. It's just that there wasn't an expression acknowledging, yeah, well, he did this, that, and the other thing, but this was pretty serious stuff, and going back and coupling all together, it has to go way over the guideline, recommended guideline. That's all, right? Yes. What was the recommended guideline? The recommended guideline, I believe, was 33 to 41 months. Yeah, 41 max, and he got 120. That's all. So it's a pretty big stretch, and it may be okay. It just sometimes takes a little more to say so. That's all. Yes, I agree, Your Honor. What I would say is that the touchstone for whether it was procedurally reasonable is just whether the reasoning of the court can be followed, and I think that is the case here. It's clear that his overriding concern was incapacitation and that he was considering, even though these convictions were outside of the 10 years, he was still within his discretion to consider them in fashioning a sentence. Okay. So is it absolutely clear that the judge understood that the bomb had not exploded on its own but had been detonated by the police, the fire department, or whatever? Is that absolutely clear? In context, yes, I would argue that it is. Of course, the standard is whether it was clearly error. That would be a reason to find procedural error. So the standard is not necessarily is it absolutely clear that there was no misconception. Here, of course, there is no evidence that there was any misapprehension. So, again, I would say that. Well, he saw the video and he said that the bomb was capable of being detonated and was detonated. Now, did he understand that the bomb could not have detonated if it hadn't been for either what the fire department did or plugging its wire into a battery? Certainly that information was presented to him. Pardon? Certainly that information had been presented to him. By the government? Yes, both by the government and in the PSR, paragraph 20 of the PSR. It noted that if an electrical source had been applied, then the bomb would have detonated. Anything further? If there are no further questions. Okay, thanks, Mr. DeCarlo. Mr. Didwania, anything further? Let me start by emphasizing that the bomb, the device here, did not detonate or explode. The gunpowder was poured out of the pipe after the fire department or bomb squad was done, and then the powder, among the other components, was passed around at the trial. So what actually happened is that the bomb squad or the fire department fired out of a cannon these rounds that then knocked the end caps off of the device. No, no, but if a bomb had been plugged into a battery by their electrical source, would it have exploded? Do we know? It's unclear, Your Honor, but at the end of the day, how the bomb squad deactivated this device to render it safe? No, no, the question is what the judge thought. Did the judge think that apparently he didn't think that, or maybe he did think, did he think that the bomb had blown up of its own volition, so to speak, or did he realize that it had been detonated by, you know, the fire department? All we have are the words in the transcript in the court. Well, there was a video. What did the video show? Right, so the video showed one explosion, and as a government witness explained at trial, that explosion was the cannon shooting its rounds and nothing to do with the device. Right. That was the only explosion, as far as I'm aware, that's on the video, and the explosion did not have anything to do with the device. So to the extent that the court is discussing that explosion, that process is not relevant to any sentencing factors here, and the court shouldn't have mentioned it, how the bomb squad conducts its operations. And if the court instead was concerned about the device itself detonating, well, that didn't happen. So he... So the judge didn't see... It's not as if the pipe bomb had just been connected to a battery and then blew up. That's right. Okay. But do you think the judge may have thought that this is what would have happened, this explosion? It would have been the same explosion? Maybe, but that would be... Was it exploded in the mailbox? It was not exploded in the mailbox. Right, that would ruin the mailbox. The mailbox was intact, and it actually fell out of the mailbox and hit the ground, and then... That's what they zapped. What you're saying, basically, you're trying to say that, no, it didn't explode on its own because it wouldn't, it couldn't. But what we're trying to say is, did the judge think that it did when he said it? It exploded, even if he'd said it a couple of times, that's all. That would be on the sentencing issue. That's right, Your Honor. And in either instance... So when he said it detonated... Okay, so it seems as if the judge thought that this bomb was operable and would have exploded on its own had the fire department not intervened. Is that your concern, that he may actually have thought the bomb... And even if he found, as I think he should have found, that it was a destructive device, he may not have realized that, oh, it was a destructive device, it wouldn't actually do any harm until someone plugged its wire into a battery. Is that your argument? Right, the sentencing court seems to have been concerned about the seriousness of the offense, and the basis for that was essentially that this was a live, operable bomb that, in fact, detonated, and that's a scary prospect when, you know, that's untrue. And, you know, so that was an improper basis for the court's conclusions here about why Mr. Lockwood should receive the sentence. Okay, well, thank you, Mr. DiNardia. And you were appointed, right? That's right, Your Honor. So we thank you for your efforts on behalf of your client. Thank you. And we also thank Ms. DuPont.